# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 48599

|  |  |  |
|---|---|---|
| In the Interest of:  Jane Doe I, John Doe I, John Doe II, and Jane Doe II, Children Under Eighteen (18) Years of Age. | ) ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) | Filed:  June 24, 2021 |
| Petitioner-Respondent, | ) ) | Melanie Gagnepain, Clerk |
| v. | ) ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT |
| JANE DOE (2021-03), | ) ) | BE CITED AS AUTHORITY |
| Respondent-Appellant. | ) ) ) | |

Appeal from the Magistrate Division of the District Court of the Fifth Judicial District, State of Idaho, Gooding County.  Hon. Casey U. Robinson, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Joseph F. James, James Law Offices, PLLC, Gooding, for appellant.

Hon. Lawrence G. Wasden, Attorney General; James T. Baird, Deputy Attorney General, Twin Falls, for respondent.

_____

BRAILSFORD, Judge

Jane Doe (Mother) appeals from the magistrate court's order terminating her parental rights to her four minor children, K.S., C.W., C.S., and A.S.[1]  Mother argues the court erred by concluding the termination of her parental rights is in the children's best interests.  We affirm.

---

[1]     The magistrate court also terminated the parental rights of K.S.'s father, but that termination is not the subject of this appeal.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2017, law enforcement declared K.S., C.W., and C.S. to be in imminent danger based on concerns about Mother's parenting and her lack of supervision of the children. The magistrate court entered an order placing the children in Mother's home under protective supervision. Ten days later, however, law enforcement again declared the children in imminent danger after K.S. ran away. At the time, Mother was eight months pregnant with A.S.

After an adjudicatory hearing in December 2017, the magistrate court placed K.S., C.W., and C.S. in the legal custody of the Department of Health and Welfare, and the Department placed the children in Mother's home on an extended home visit. After A.S. was born, the Department filed an amended petition to add A.S. to the case; the magistrate court amended its adjudicatory order in January 2018 to place A.S. in the Department's legal custody; and the Department placed A.S. in Mother's home under protective supervision. Also, in January 2018, the court approved a case plan for Mother to perform then later amended the plan to include A.S.[2] This plan required Mother to, among other things, address concerns regarding her substance abuse and mental health issues; to maintain safe, stable, and drug-free housing; and to demonstrate her ability to parent, including providing for the children's physical, emotional, and mental health needs.

In July 2018, the Department removed the children from Mother's home again after Mother and A.S. both tested positive for methamphetamine. Then, in August 2018, the magistrate court amended Mother's case plan to update her tasks, but in September 2019, Mother was incarcerated for possession of a controlled substance and remained incarcerated for fourteen months until October 2020.

While Mother was incarcerated, the Department filed a petition in May 2019 to terminate her parental rights. After several continuances, the magistrate court held a termination hearing in December 2020. The Department presented the testimony of a counselor for two of the children, two Department social workers, the children's advocate coordinator, and their foster mother. Also, Mother and K.S. testified.

---

[2] This case plan included tasks for the children's maternal grandmother to perform. The magistrate court, however, later amended the plan to remove the grandmother.

In January 2021, the magistrate court entered written findings and conclusions. The court concluded that Mother neglected the children under Idaho Code § 16-2005(1)(b) by failing to perform her case plan and that termination of her parental rights is in the children's best interests. Mother timely appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate

court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

### III.

### ANALYSIS

On appeal, Mother does not challenge the magistrate court's conclusion that she neglected the children by failing to comply with her case plan. Rather, Mother only challenges the court's conclusion that the termination of her parental rights is in the children's best interests. Once a statutory ground for termination, such as neglect, has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

Mother argues that substantial and competent evidence does not support the magistrate court's conclusion that the termination of her parental rights is in the children's best interests. Specifically, she challenges the court's finding that she "failed to protect the children and allowed the children to be subject to sexual abuse by entrusting them to the care of a relative" and that she "had not fully addressed her mental health issues." These arguments, however, ignore the numerous factual findings the court made in support of its conclusion that the termination of Mother's parental rights is in the children's best interests.

For example, the magistrate court found that Mother failed to establish "sufficient, clean, stable or safe housing throughout the case"; admitted to being "homeless and living out of her car" at times; and "was living in a halfway house, where her children could not reside with her" at the time of trial. Further, the court found that Mother "was unemployed at the time of trial and had been since her release from incarceration" and "does not have employment to provide for her children's needs." Substantial and competent evidence supports these findings, including Mother's own testimony

during which she admitted to being homeless before being incarcerated, to living at the time of trial in a halfway house where the children could not live, and to being unemployed since her release from incarceration.

Additionally, the magistrate court noted Mother's history with substance abuse. While the evidence is conflicting and Mother denies missing drug tests, the evidence shows the children were removed from her home after she and A.S. tested positive for methamphetamine. A Department social worker assigned to Mother's case since December 2017 testified that Mother had twice tested positive for methamphetamine during the case's pendency. Further, Mother admitted to being incarcerated for fourteen months for possession of methamphetamine, and at the time of trial, she was not participating in any substance abuse aftercare.

The magistrate court also found the children were improving in foster care. Substantial and competent evidence supports this finding. For example, C.S. and K.S.'s counselor testified they were improving; the children's foster mother testified the children were improving; and a Department social worker testified the children had shown "significant improvements" since being in foster care. Further, the children's advocate coordinator testified that the termination of Mother's parental rights is in the children's best interests.

Finally, Mother admitted she cannot take care of her children; they should not have to wait for her to complete her case plan; and waiting would not be "fair" to them. Specifically, Mother testified during the termination hearing as follows:

> Q. Should your children have to wait over three years for you to start working your case plans, because it would still take you time to complete your case plan?
> A. No.
> Q. You think it's fair to them?
> A. No, I don't.
> Q. And why should they have to wait longer?
> A. They shouldn't.
> Q. And [A.S.] has been in care almost all of her life?
> A. Yes.
> Q. Do you think that's fair to her?
> A. No.
> Q. Today, as you sit there, you are not in any position to take care of your kids today totally, are you?
> A. No, I'm not.
> Q. In fact, you're very little in to what you need to support a child to take care of them?
> A. No, I'm not. I can't take care of my kids right now, no.

5

Mother's admissions and other substantial and competent evidence support the magistrate court's conclusion that termination of Mother's parental rights is in the children's best interests. This conclusion is not undermined by Mother's assertion that she had no knowledge of any sexual abuse involving a relative to whom she entrusted the children's care or by the fact that her amended case plan did not require her to contact a mental health counselor after she was released from incarceration.

Further, Mother's testimony that she had bonded with the children and K.S.'s testimony that she wanted to live with Mother do not undermine the magistrate court's conclusion that the termination of Mother's parental rights is in the children's best interests. The magistrate correctly considered the children's "extreme need of security and finality" and, as the Idaho Supreme Court has previously ruled, "love does not always translate into the ability to discharge parental responsibilities." *Idaho Dep't of Health & Welfare v. Doe* (2014-17), 157 Idaho 694, 703, 339 P.3d 755, 764 (2014). Mother's love for the children and theirs for her does not overcome the magistrate court's conclusion that terminating Mother's parental rights is in the children's best interests.

## IV.

## CONCLUSION

We hold that substantial and competent evidence supports the magistrate court's conclusion that the termination of Mother's parental rights is in the children's best interests. Accordingly, we affirm the judgment terminating Mother's parental rights.

Judge GRATTON and Judge LORELLO **CONCUR**.